UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | 1:08-cr-107-SEB-KPF |
| vs. ) | |
| ) | |
| LEMOND LEDFORD, ) | |
| ) | |
| Defendant. ) | |

**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS**

This matter is before the Court on the Motion to Suppress [Docket No. 24], filed by Defendant, Lemond Ledford, on September 16, 2008. In his motion, Defendant seeks to suppress evidence on the ground that it was obtained in violation of his Fourth Amendment right to be free from unreasonable searches and seizures. A hearing was held to develop these issues on October 28, 2008. For the reasons detailed below, Defendant's Motion is <u>DENIED</u>.

*Analysis*

*I. Factual Background*

The facts giving rise to the Fourth Amendment issues raised in the Motion to Suppress are as follows:

On Thursday afternoon, May 1, 2008, at approximately 2:00 p.m., Indianapolis

Metropolitan Police Department Officer Steven Hayth was dispatched to Ellenberger Park to meet with an off-duty Lawrence, Indiana, police officer (Justin Sharpe), who had radioed in a report concerning an incident in which he witnessed the driver of a gold Chrysler 300M automobile, bearing Indiana license plate number 95 J 9137 (old style), brandish a firearm.  Officer Sharpe told Officer Hayth that he had been driving in his personal vehicle along with his girlfriend, traveling east on 10th Street near the intersection of 10th Street and Shannon Street.  The driver of a gold Chrysler was ahead of him in the line of traffic and had stopped his car in the driving lane to engage in a conversation with another driver of a car headed in the opposite direction.  Because the two conversationalists were impeding traffic behind them, at some point one of the other stalled drivers honked a car horn at the driver of the gold Chrysler, which prompted the latter driver to move his car over towards the shoulder of the street to get out of the way.  The honking presumably irritated that driver, however, because, when Officer Sharpe drove by him, he brandished a firearm by holding it up at chest level and in plain view of Officer Sharpe.  The driver of the gold Chrysler 300M who brandished the firearm in Officer Sharpe's presence was later identified as the Defendant, Lamont Ledford.

  When Officer Hayth met with Officer Sharpe at nearby Ellenberger Park, within a matter of only a few minutes of Officer Sharpe's call to IMPD dispatch and the arrival of Officer Hayth, Officer Sharpe provided a full description of the subject driver, the automobile, and the license plate number.

  After receiving the information from Officer Sharpe, Officer Hayth drove around the neighborhood in which the encounter between Ledford and Officer Sharpe had

occurred but did not locate the suspect or the car. Not until approximately two hours later a few blocks away did Officer Hayth spot a person matching the suspect's description driving a car which also matched the description provided previously by Officer Sharpe.

After maneuvering his police car behind Defendant's car so that both vehicles were proceeding in a southerly direction on Emerson Street, Officer Hyath was able to confirm that the car he had spotted as the suspect vehicle was in fact a gold Chrysler 300M and that the driver, whom he could see clearly through the open window on the driver's side of the car, fit the description of the man who brandished the firearm as provided earlier by Officer Sharpe, and the license plate number matched that provided by Officer Sharpe, with the exception of one digit. At this point, Officer Hayth ran a license check on his in-car computer and determined that the license plate on the gold Chrysler 300M was registered to a blue 2002 Ford Taurus under the name of Laurie Ledford. On the basis of this information, Officer Hayth followed the gold Chrysler which turned west at the corner onto 16th Street, at which point he signaled the driver to stop by turning on his red flashing lights and sounding a blast on his siren. The driver pulled over into a grocery store parking lot and brought his car to a halt.

Officer Hayth immediately radioed for backup police officers to assist him. He exited his car with his service revolver drawn, being concerned for his safety based on the reports from Office Sharpe that the suspect had earlier brandished a handgun. Officer Hayth called to the driver of the Chrysler, ordering him to put his hands outside the open window and keep them in view and not to try to escape. The backup officers had arrived on the scene by this time. Officer Hayth walked up to the driver's side of the Chrysler,

took hold of the driver's extended hands, opened the door of the car and removed him from the vehicle, turned him around so that he faced the car, and placed him in handcuffs behind his back. He then led Defendant to the rear of the parked gold Chrysler 300M and placed him on the ground. (Officer Hayth testified that he had Ledford sit down on his buttocks and lean back against the bumper of the car; Ledford testified that he was placed face down on the ground. We make no effort to resolve this discrepancy since for purposes of the Motion to suppress it is essentially irrelevant.)

   Officer Hayth then informed Ledford that the reason for the traffic stop was that the license plate on his car did not match the car and that he was under investigation for possibly brandishing a firearm at a Lawrence police officer. Ledford seemed confused but denied brandishing a firearm. Officer Hayth asked who the car belonged to and Ledford explained that the car belonged to his wife and that they had owned the car only a couple of weeks and that the purchase paperwork was in the glove compartment inside the car. In addition, Officer Hayth asked if Ledford had a driver's license or an ID and Ledford told Officer Hayth that his personal identification (driver's license) was in the console area between the two front seats.

   According to Officer Hayth, he had not at this point placed Ledford under arrest, though Ledford was in apparent violation of state law for having an improperly licensed car. Ledford was also at this same time under investigation for possible criminal recklessness for having brandished a firearm. Ledford was detained according to Officer Hayth to allow him to complete a <u>Terry</u> investigative stop but Ledford was not under arrest; Officer Hayth nonetheless gave Ledford his <u>Miranda</u> rights warnings. Officer

John Walters, an IMPD officer who responded to Officer Hayth's call for backup assistance, was present when Ledford informed Hayth of the location of the car registration documents in the glove compartment. Officer Walters proceeded to open the front door of the car to retrieve them. Officer Hayth testified that he did not allow Ledford to retrieve the documents himself because of the officer's concerns that Ledford would then control the area of the interior of the car and could obtain the firearm, if there was one, and attempt to use it on them. When Officer Walters entered the car to retrieve the registration materials from the glove compartment, he saw in plain view what he believed to be marijuana in the front seat area located next to the console between the seats. Officer Walters called to Officer Hayth to tell him he had discovered marijuana, whereupon Officer Hayth moved to look at it himself and, after confirming the discovery, then informed Ledford that he was under arrest for possession of marijuana. After having placed Ledford under arrest for possession of marijuana, the police undertook a search of the passenger compartment of the car and in due course discovered a handgun in the storage pouch attached to the rear of the front passenger seat. Officer Sharpe was called to the scene to determine if he could identify the driver and the car with whom he had had his encounter earlier that day, and he provided a positive identification of both the man and the automobile. Ledford was taken into custody after the seized property was secured, and was transported downtown for booking.

Ledford testified at the hearing that he was not provided any information by Officer Hayth after he was stopped and cuffed and placed on the ground regarding the purpose of the stop. He testified that he did not know why he had been stopped, and that

he had no conversation regarding the mismatched plates or the fact that his wife owned the car or that they had only recently purchased it. Further, he never told the officer about the location of the registration and identification documents inside the car or authorized their retrieval. Instead, according to Ledford, after he was arrested, the officers just started searching the interior of the car, as a result of which, he concedes, they did discover the marijuana in a small plastic baggie located between the front two seats and the firearm in the storage pouch attached to the back of the front passenger seat. We are not persuaded that the Defendant's sparse account of these facts is as reliable as the more detailed version provided by the trained and experienced police officer and so, to the extent the police officer's testimony is in conflict with Ledford's, we credit that version of the facts provided by Officer Hayth.

## II. Discussion

The first issue raised by the Motion to Suppress is whether Officer Hayth had reasonable suspicion to justify the stop of Ledford's vehicle. Given the report that a firearm had been "brandished," according to Officer Sharpe, by a person matching the description of the driver, in a car also matching Sharpe's description, bearing a nearly identical license plate to that reported by Sharpe, coupled with Officer Hayth's independent discovery of the mismatch between the car and its license plate, we hold that Officer Hayth certainly had sufficient suspicions to warrant further investigation when he stopped Ledford's car and detained him.

The second Fourth Amendment issue in this case is whether Officer Hayth's

handcuffing and "Mirandizing" of Ledford constituted a custodial arrest as opposed to simply an extension of the Terry stop and investigation of the vehicle. Officer Hayth's conduct - stopping Ledford's car, removing him from it, handcuffing Ledford and reading him his Miranda rights - did not constitute an arrest in part because, according to Ledford, Officer Hayth apparently informed him that "after he checked out the situation, Ledford would be free to go." More importantly, the Seventh Circuit has held that handcuffing a suspect is a reasonable part of a Terry stop, if "the suspect is thought to be armed." United States v. Tilmon, 19 F.3d 1221, 1226 (7th Cir. 1994). One reason for the stop of Ledford - the suspected brandishing by him of a firearm - reasonably led the officer to believe that Ledford was in fact armed. Therefore, Officer Hayth's actions in subduing Ledford by the use of the handcuffs and placing him on the ground behind his car were reasonable extensions of the Terry stop.

Alternatively, if we were to regard this as an arrest of Ledford at this point, we would find it constitutional based on the holding in Atwater v. Lago Vista, 532 U.S. 318 (2001).[1] In Atwater, the Supreme Court held that an arrest for a misdemeanor does not constitute an unreasonable seizure under the Fourth Amendment (nor does subsequent

---

[1] Were we to consider this an arrest, we would do so under the rule set out in California v. Hodari D, 499 U.S. 621 (1991), in which the Court stated that a seizure (or arrest) occurs upon submission to physical force. We note here, however, that although physical force was applied to Ledford when he was handcuffed, the Tilmon case more nearly approximates the facts of this case. Moreover, the Supreme Court has emphasized that a seizure occurs when a reasonable person would not feel free to leave. See Florida v. Bostick, 501 U.S. 429 (1991). Ledford testified that Officer Hayth told him if "everything checks out, you'll be free to go." Officer Hayth did not testify to that, but did say Ledford was detained by him only to permit the investigation to proceed and that he was not under arrest. For these reasons, we do not consider an arrest to have occurred at this point.

booking of the arrestee).  Thus, an Atwater arrest would have been justified by the license infraction.  Whether this action is considered an extension of the Terry investigative stop or a full arrest, it was therefore legally justified.  For purposes of the remainder of our analysis, however, we treat Ledford's cuffing and detaining as an extension of the Terry stop.[2]

The third issue raised by the Motion to Suppress is whether the retrieval of Ledford's identification and vehicle registration from the car by a police officer constituted an impermissible search.  We begin by noting that the Supreme Court has stated that police officers executing a Terry stop are authorized to takes steps reasonably necessary to protect their personal safety.  Michigan v. Long, 463 U.S. 1032, 1049 (1983).  This might not have justified a full search of the vehicle at this point, especially since Ledford was cuffed and secured at the rear of the car, but it would have justified a visual inspection of whatever was in plain view in the passenger compartment.  In any event, the Court has approved of "stop-and-identify" actions taken by police officers, in which they seek nothing more than to identify the suspect in furtherance of the Terry stop (a "minimal intrusion" into the privacy of the suspect), so that the officers can quickly dispel or confirm this small part of their suspicions that led to the stop.  Hiibel v. Sixth Judicial District Court of Nevada, 542 U.S. 177 (2004).  Entering the vehicle to retrieve the information in the glove compartment and near the console was altogether justified

---

[2]It should be noted that, if we were to continue our analysis under the alternative finding that this was an Atwater arrest, the suppression issues would be easily resolved in the Government's favor under the law of searches incident to arrest.

because Ledford had told the officers that the car purchase documents were in the glove compartment and his identification was in the vicinity of the center console between the front seats of the vehicle, clearly suggesting that they had his permission to retrieve those materials.  Thus, we conclude that Officer Walters's entry into the front seat area of the car, done only in an effort to retrieve the identification papers and to verify Ledford's identity and ownership of the car, was a lawful extension of the Terry stop, and thus not an unreasonable search.

   The fourth issue raised in the Motion to Suppress is whether the discovery of what appeared to be marijuana located between the driver's seat right cushion and the center console in a clear plastic baggie constituted a violation of the Fourth Amendment. Because the marijuana was in the officer's plain view when he was permissibly inside the vehicle (based on the implied permission by Ledford), its discovery was not the fruit of an unreasonable search.

   The discovery of the marijuana provided the officers with probable cause to arrest Ledford, whereupon Officer Hayth placed Ledford under arrest.  The fifth issue arises as to whether the resultant search of the passenger compartment of the vehicle that led to the discovery of the handgun violated the Fourth Amendment. The Supreme Court has held that police may search an automobile when that search is incident to a lawful custodial arrest, and that the search may include the entire passenger compartment of the vehicle. New York v. Belton, 453 U.S. 454, 460 (1981).  The primary rationale underpinning Belton's holding was a concern for officer safety.  Thus, we next address whether that rationale for a search applies to the circumstances of this arrest, even though Ledford had

exited the vehicle and was in handcuffs and secured on the ground.  In Thornton v. United States, 541 U.S. 615 (2004), the Court held that as long as an arrestee was a recent occupant of a vehicle, police officers may search the entire passenger compartment, including containers, as a search incident to the arrest.  Once again, officer safety was the principal rationale for that holding.  The Thornton rule therefore validates the search of the passenger compartment here, in particular because the officers had detained Ledford in part based on the report that he "brandished" a firearm which justifies the officers' concerns for their safety.  Therefore, no Fourth Amendment violation occurred when the officers searched the vehicle which search produced the handgun.

### III.  Conclusion

Having considered Defendant's Fourth Amendment challenges to certain evidence in this case, we find no constitutional violation.  Therefore, Defendant's Motion to Suppress is DENIED.

Date: _____10/30/2008_____

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

James C. McKinley
Indiana Federal Community Defenders, Inc.
111 Monument Circle, Suite 752
Indianapolis, IN 46204
317-383-3520

Doris L. Pryor
Assistant United States Attorney
10 West Market Street, Suite 2100
Indianapolis, IN 46204
317-226-6333